UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RHONDA ROWLAND-MONK,                           Case No. 1:13-cv-754
       Plaintiff,                              Barrett, J.
                                               Litkovitz, M.J.
       vs.

COMMISSIONER OF                                **REPORT AND**
SOCIAL SECURITY,                               **RECOMMENDATION**
       Defendant.


Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final

decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application

for disability insurance benefits (DIB).   This matter is before the Court on plaintiff's Statement

of Errors (Doc. 12), the Commissioner's response in opposition (Doc. 17), and plaintiff's reply

memorandum (Doc. 18).

## I.  Procedural Background

Plaintiff filed an application for DIB in August 2010, alleging disability since July 6,

2010, due to back pain, depression, asthma, allergies, chronic obstructive pulmonary disease

(COPD), high blood pressure (HBP), insomnia, high cholesterol, and migraine headaches.

Plaintiff's application was denied initially and upon reconsideration.   Plaintiff, through counsel,

requested and was granted a *de novo* hearing before administrative law judge (ALJ) Beverly

Susler Parkhurst.   Plaintiff, a medical expert (ME), and a vocational expert (VE) appeared and

testified via video at the ALJ hearing.   On April 26, 2012, the ALJ issued a decision denying

plaintiff's DIB application.   Plaintiff's request for review by the Appeals Council was denied,

making the decision of the ALJ the final administrative decision of the Commissioner.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.   42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.   42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.   If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a) (4)(i)-(v), 404.1520(b)-(g)).   The claimant has the burden of proof at the first four steps of the sequential evaluation process.   *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir.

2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 1, 2014.

2. The [plaintiff] has not engaged in substantial gainful activity since July 6, 2010, the alleged onset date (20 C.F.R. 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: mild degenerative disc disease, sleep apnea, obesity, and depression (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), meaning the [plaintiff] is capable of lifting or carrying 20 pounds occasionally, lifting or carrying 10 pounds frequently, sitting for 6 hours in an 8-hour workday, and standing or walking 6 hours in an 8-hour workday. The [plaintiff] is capable of simple, routine and repetitive tasks. The [plaintiff] is capable of stooping, squatting, climbing ramps and stairs (5 to 6 stairs), kneeling, twisting, and crawling up to 1/3 of the day, balancing for up to 2/3 of the day, and must avoid climbing long ladders, ropes and scaffolds. Due to her pain, she must avoid exposure to extreme cold that might cause spasms and must avoid vibrations.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1]Plaintiff has past relevant work as an automotive assembler, truck driver, and mail carrier. (Tr. 22, 97).

3

7. The [plaintiff] was born [in] . . . 1961 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date.   The [plaintiff] subsequently changed age category to closely approaching advanced age (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled," whether or not the [plaintiff] has transferable job skills. (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform. (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] was not under a disability, as defined in the Social Security Act, at any time from February 28, 2007, the alleged onset date, through September 30, 2009, the date last insured (20 CFR 404.1520(g)).

(Tr. 15-23).

## C.  Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards.   *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2]The ALJ relied on the VE's testimony to find that plaintiff would be able to perform 6,026 unskilled, light jobs in the State of Ohio as a collator operator, routing clerk, or mail clerk. (Tr. 23, 98-100).

4

(1938)).    Substantial evidence consists of "more than a scintilla of evidence but less than a

preponderance. . . ."    *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).    In

deciding whether the Commissioner's findings are supported by substantial evidence, the Court

considers the record as a whole.    *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the

disability determination.    Even if substantial evidence supports the ALJ's conclusion that the

plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

to follow its own regulations and where that error prejudices a claimant on the merits or deprives

the claimant of a substantial right."    *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

*See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ' s decision was

otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving

weight to treating physician's opinion, thereby violating the agency's own regulations).

## D.  Specific Errors

Plaintiff asserts the following errors on appeal: (1) the ALJ erred in formulating

plaintiff's residual functional capacity (RFC); (2) the ALJ erred at Step Five of the sequential

evaluation because the hypothetical question presented to the VE did not incorporate all of

plaintiff's supported limitations; and (3) the ALJ erred in assessing plaintiff's credibility.[3]

(Docs. 12, 18).

---

[3]Plaintiff's Statement of Errors includes only two enumerated asserted errors: the first error is that the "[ALJ]'s RFC finding and hypothetical question to the [VE] did not match nor did the [ALJ]'s RFC finding and hypothetical include all of plaintiff's mental limitations" while the second is comprised of plaintiff's credibility argument. *See* Doc. 12.   Because plaintiff raises two distinct arguments in her first asserted error, the Court will

1. <u>The ALJ's RFC determination is supported by substantial evidence</u>.

Plaintiff contends the ALJ erred in formulating her RFC because it did not include limitations found by the consultative examining psychologist, David Chiappone, Ph.D., and non-examining state agency reviewing psychologists, Leslie Rudy, Ph.D. and Karla Voyten, Ph.D., whose opinions were given great weight and relied on by the ALJ. Plaintiff maintains these doctors opined that she is limited to carrying out very short and simple instructions and having only occasional and superficial social interaction due to her deficits in maintaining attention, concentration or pace and social functioning. Plaintiff asserts the ALJ erred by not including these limitations in formulating her RFC or in the hypothetical questions presented to the VE. (Doc. 12 at 13-14).

The pertinent medical evidence is as follows. Plaintiff testified that she does not receive treatment from a mental health professional but is prescribed medication by her primary care physician to treat her depression. *See* Tr. 66, 107, 649. Accordingly, the only medical and opinion evidence in the record from mental health professionals are from consultative examining psychologist Dr. Chiappone and Drs. Rudy and Voyten, the state agency reviewing psychologists.

Dr. Chiappone evaluated plaintiff on October 19, 2010. Plaintiff presented as depressed; made depressive statements; and had low energy. However, plaintiff was motivated to participate and put forth adequate effort and persistence on testing and related in a cooperative and polite fashion. Plaintiff was able to follow directions and worked at an average pace. Plaintiff's concentration, attention, and memory were noted as reduced because on mental status exam she remembered 0 of 3 objects with interference and 1 of 3 objects with a 5-minute delay.

_____

address them separately.

However, plaintiff was able to remember 5 digits forward and 4 backward. Dr. Chiappone opined that plaintiff is moderately impaired in her ability to understand, remember, and follow instructions and mildly impaired in her ability to maintain attention and concentration. Dr. Chiappone further opined that plaintiff had no impairment in her ability to relate to others, including fellow coworkers and supervisors, as she related quite well during the evaluation. (Tr. 559-63).

The state agency reviewing psychologists, Drs. Rudy and Voyten, reviewed the file and completed Psychiatric Review Technique and Mental RFC Assessment forms. Drs. Rudy and Voyten assessed plaintiff as presenting with a somatoform disorder.[4] They opined that plaintiff had certain functional limitations based on their review of Dr. Chiappone's evaluation and plaintiff's statements in Function and Symptom Reports. (Tr. 240-51, 258-65). Regarding plaintiff's understanding and memory limitations, the doctors opined that plaintiff was not significantly limited in her abilities to remember locations and work-like procedures or understand, remember, and carry out very short and simple instructions, but she was moderately limited in her abilities to understand, remember, and carry out detailed instructions. They further opined that plaintiff was moderately limited in her ability to interact with the general public, accept instructions and respond appropriately to supervisors' criticism, and get along with coworkers or peers, but that she retained the capacity for tasks requiring occasional and superficial social interactions. (Tr. 104-17, 124-29).

---

[4]"Somatoform pain disorder is pain that is severe enough to disrupt a person's everyday life. The pain is like that of a physical disorder, but no physical cause is found. The pain is thought to be due to psychological problems. The pain that people with this disorder feel is real. It is not created or faked on purpose (malingering)." *See* http://www.nlm.nih.gov/medlineplus/ency/article/000922.htm (last visited December 10, 2014).

The ALJ gave "great weight" to Dr. Chiappone, Dr. Rudy, and Dr. Voyten's opinions because they were consistent with the ME's opinion and supported by direct references to the medical evidence of record.  (Tr. 21).  The ALJ found that plaintiff retained the RFC to perform light work with some restrictions, including a limitation to "simple, routine and repetitive tasks." (Tr. 18).  Plaintiff argues that the ALJ's RFC formulation is deficient because it does not include restrictions limiting her to "being able to carry out very short and simple instructions" and "only occasional and superficial social interaction."  (Doc. 12 at 13).  Plaintiff also argues that she had moderate limitations in accepting instructions and criticism from supervisors and getting along with others which the ALJ failed to include in her RFC.  (*Id.*).

Plaintiff's characterization of the opinion evidence and the ALJ's RFC formulation is inaccurate and her argument ignores the ALJ's reasoned explanation for rejecting the state agency psychologists' limitations on plaintiff's social functioning.  Notably, no psychologist of record opined that plaintiff was restricted to carrying out *only* "very short and simple" instructions.  Drs. Rudy and Voyten found that plaintiff was "not significantly limited" in her ability to understand, remember, and carry out very short and simple instructions (Tr. 113, 128), but they never opined that this was the apex of plaintiff's abilities.  Rather, they opined that plaintiff was moderately limited in, but was not precluded from, understanding, remembering, and carrying out detailed instructions.  (*Id.*).  Dr. Chiappone similarly found that plaintiff was moderately impaired in her ability to understand, remember, and follow instructions.  (Tr. 563). The ALJ's RFC limiting plaintiff to "simple, routine and repetitive tasks" appropriately accounts for the moderate limitations found by these doctors.  *See Reynolds v. Comm'r of Soc. Sec.*, No. 10-11044, 2011 WL 3897793, at *8-9 (E.D. Mich. Aug. 19, 2011) (upholding an ALJ's RFC

8

formulation limiting the Social Security claimant to "simple, routine and repetitive" work where the claimant had, *inter alia*, moderate impairment in his ability to understand, remember, and carry out detailed instructions).  *See also Grainger v. Comm'r of Soc. Sec.*, No. 3:12-cv-296, 2013 WL 1303826, at *13 (N.D. Ohio Mar. 28, 2013) (noting that a medical opinion that a Social Security claimant has a moderate impairment in understanding, remembering, and carrying out detailed instructions does not equate to a finding of preclusion from those work activities).

Plaintiff also argues the ALJ erred by not restricting her "to only occasional and superficial social interaction" to reflect the "moderate limitations in accepting instruction and criticism from supervisors and getting along with co-workers" found by Drs. Rudy and Voyten, whose opinions the ALJ gave "great weight."   (Doc. 12 at 13).

Drs. Rudy and Voyten opined that plaintiff's ability to interact with the general public, accept instructions, respond appropriate to supervisors' criticism, and get along with coworkers or peers was moderately impaired.   They opined that she retained "the capacity for tasks requiring occasional and superficial social interactions." (Tr. 114, 129).   Although the ALJ gave "great weight" to the opinions of Drs. Rudy and Voyten, she declined to adopt their assessment of plaintiff's social functioning.   The ALJ found the record did not support their conclusion and she instead determined that plaintiff has no difficulties in social functioning.   (Tr. 17).   The ALJ cited to Dr. Chiappone's contrary opinion that plaintiff had no limitations in social functioning, based on his observation that plaintiff related quite well during the evaluation and that she reported relating adequately to family members.   (*Id.*, citing Tr. 559, 563).   The ALJ also noted that plaintiff's testimony and other evidence about her relationships with her family and ability to perform activities with others establishes she has no limitations in social functioning.   (Tr. 17).

9

Plaintiff's testimony and self-reports indicate she has no problems getting along with family, friends, neighbors or others; she lives with her husband and child; she works delivering newspapers; she sporadically worked for the post office; she is able to attend medical appointments; she gets along "O.K." and "fine" with authority figures; and she has never been fired or laid off from a job because of problems getting along with other people.  (Tr. 47, 49, 57, 69, 248-50, 263-64).  Plaintiff's statements and Dr. Chiappone's findings substantially support the ALJ's determination that she is not limited in social functioning.  Although this evidence conflicts with the opinions of Drs. Rudy and Voyten, it is the ALJ's function to resolve inconsistencies and conflicts in the medical evidence, *see King v. Heckler,* 742 F.2d 968, 974 (6th Cir.1984), and the record reveals that the ALJ properly considered the totality of the evidence in the record in assessing plaintiff's social functioning.  Accordingly, the ALJ did not err by not including additional social functioning limitations in the RFC formulation.

Plaintiff has not identified any medical evidence of record establishing that she has additional limitations related to her mental health impairment not accommodated by the ALJ's RFC formulation.  Given the conclusions made by Drs. Chiappone, Rudy, and Voyten, plaintiff's reports and testimony, and the absence of any contradicting medical opinion evidence, the ALJ's RFC formulation is supported by substantial evidence.  Accordingly, plaintiff's first assignment of error should be overruled.

2. The ALJ did not commit reversible error at Step Five of the sequential evaluation.

Plaintiff asserts that the ALJ's vocational findings are erroneous because the ALJ failed to account for all of plaintiff's limitations in her hypothetical question to the VE.  While the ALJ found that plaintiff retained the RFC to perform "simple, routine, and repetitive tasks" (Tr. 18),

the ALJ's hypothetical question to the VE omitted the restriction for repetitive tasks. Plaintiff maintains that due to this omission, the ALJ erred by relying on the VE's testimony and failed to carry her burden at Step Five of the sequential evaluation process. (Doc. 12 at 11-12).

The ALJ determined that plaintiff was not disabled at Step Five of the sequential evaluation process because she was capable of performing a significant number of jobs in the national and regional economy as a collator operator, routing clerk, and mail clerk. (Tr. 24-23). The Commissioner bears the burden at Step Five of the sequential evaluation to establish that plaintiff retains the capacity to perform other substantial gainful activity that exists in the national economy. 20 C.F.R. § 404.1520(g). *See also Rabbers*, 582 F.3d at 652; *Harmon*, 168 F.3d at 291. The ALJ can meet this burden by relying on a VE's testimony in response to a hypothetical question that accurately portrays a claimant's functional limitations. *See Varley v. Sec'y of H.H.S.*, 820 F.2d 777, 779 (6th Cir. 1987) (citations omitted). Here, the ALJ formulated an RFC limiting plaintiff to "simple, routine and repetitive tasks" (Tr. 18), but her hypothetical question to the VE limited plaintiff to "simple, routine work":

> Q. Yes, okay. Now let me give you a hypothetical . . . assume the individual can lift and carry 10 pounds frequently, 20 pounds occasionally; stand six out of eight hours, sit six out of eight hours; push/pull is the same 10, 20; occasional on all postural's (sic) except balance is frequent, occasional means up to a third of the day; in addition no long ladders or scaffolds; but this individual can handle occasionally, up to a third of the day, ramps, stairs, five to six at a time approximately; and must avoid extreme cold and vibrations; this individual is limited to simple, routine work; can this person perform any of the past work of [plaintiff]?"
>
> A. No.
>
> Q. Okay, are there other jobs this person could perform?
>
> A. Yes.

(Tr. 98). The VE proceeded to testify that the individual described in the hypothetical question could perform work as a collator operator, routing clerk, and mail clerk. (Tr. 98-100).

The issue before the Court is whether the ALJ's omission of the word "repetitive" in her hypothetical question constitutes reversible or harmless error. Plaintiff argues that she is precluded from the jobs identified by the VE pursuant to the ALJ's RFC formulation because "[n]one of these positions are repetitive but include various duties." (Doc. 12 at 12). The undersigned disagrees with plaintiff's characterization of these positions. The Dictionary of Occupational Titles (DOT) describes the jobs of collator operator, DOT 208.685-010, routing clerk, DOT 222.687-022, and mail clerk, DOT 209.687-026, as requiring performance of "repetitive or short-cycle work." *See* DICOT 208.685-010, 1991 WL 671753; DICOT 222.687-022, 1991 WL 672133; DICOT 209.687-026, 1991 WL 671813. Because the jobs identified by the VE in response to the ALJ's hypothetical question consist of repetitive work, the ALJ's omission of the word "repetitive" was harmless error and the ALJ's determination at Step Five of the sequential evaluation is supported by substantial evidence.

Plaintiff's second assignment of error should be overruled.

3. The ALJ's credibility finding is supported by substantial evidence.

For her final assignment of error, plaintiff contends the ALJ erred by discounting her credibility. Plaintiff argues that because her mild degenerative disc disease, sleep apnea, obesity, and depression were found to be severe impairments, that the ALJ should have fully credited her subjective reports of disabling pain. Plaintiff further asserts the ALJ erred in relying on her reported activities of daily living, *i.e.*, occasionally driving and doing chores, in

12

discounting her credibility and finding her not disabled.  (Doc. 12 at 14-17).  The undersigned

finds that the ALJ's credibility determination is supported by substantial evidence.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of

witnesses, including that of the claimant.  *Rogers*, 486 F.3d at 247 (citations omitted).  In light

of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's

credibility finding is entitled to deference and should not be discarded lightly.  *Buxton v. Halter*,

246 F.3d 762, 773 (6th Cir. 2001); *Kirk*, 667 F.2d at 538.  "If an ALJ rejects a claimant's

testimony as incredible, he must clearly state his reasons for doing so."  *Felisky v. Bowen*, 35

F.3d 1027, 1036 (6th Cir. 1994).  The ALJ's articulation of reasons for crediting or rejecting a

claimant's testimony must be explicit and "is absolutely essential for meaningful appellate

review."  *Hurst v. Sec'y of H.H.S.*, 753 F.2d 517, 519 (6th Cir. 1985) (citing *Zblewski v.*

*Schweiker*, 732 F.2d 75, 78 (7th Cir. 1984)).

The ALJ is not free to make credibility determinations based solely upon an "intangible

or intuitive notion about an individual's credibility."  *Rogers*, 486 F.3d at 247.  Rather, such

determination must find support in the record.  *Id.*  Whenever a claimant's complaints regarding

symptoms or their intensity and persistence are not supported by objective medical evidence, the

ALJ must make a determination of the credibility of the claimant in connection with his or her

complaints "based on a consideration of the entire case record."  *Id.*  "Consistency between a

claimant's symptom complaints and the other evidence in the record tends to support the

credibility of the claimant while inconsistency, although not necessarily defeating, should have

the opposite effect."  *Id.* at 248.

Here, the ALJ determined that plaintiff's statements as to the severity of her symptoms

were not fully credible because: (1) she is currently working on a part-time basis; (2) she

collected unemployment benefits in 2010 and 2011, during the alleged disability period, and

represented that she was capable of performing full-time work; (3) in 2011, she drove a mail

truck for the United States Postal Service one day a week; (4) she was laid off from her previous

full-time position and did not leave due to her impairments; (5) she reported to medical providers

that medication was working well to control her pain, she felt much improved, and she was able

to exercise; (6) her doctors have noted that her symptoms are not severe enough for surgery; (7)

the objective evidence does not support her subjective reports of pain; and (8) she engages in

activities of daily living that are inconsistent with her claims of disabling pain.   (Tr. 20-21).

Upon review of the record, the undersigned finds that the ALJ's credibility determination is

supported by substantial evidence.

First, plaintiff testified that she works on a part-time basis delivering newspapers.   (Tr.

49).   She works daily from approximately 2:00 a.m. to 5:00 a.m. and tosses newspapers from a

vehicle driven by her daughter.   (*Id.*).   Plaintiff testified that her daughter usually gets out of the

vehicle to deliver papers that cannot be "tossed."   (Tr. 58).   Plaintiff also worked one day a

week driving a mail truck from 10:00 a.m. to 1:30 p.m. in 2011.   (Tr. 51).   At the ALJ hearing,

however, plaintiff testified that she could not sit for more than 30 minutes at a time.   (Tr. 67).

This testimony is inconsistent with her performance of these jobs as she testified that she sits for

three hours at a time while delivering papers and driving the mail truck necessarily required

extensive periods of sitting.   Plaintiff also failed to indicate that she had any limitations in sitting

in Function Reports she completed and submitted in support of her disability claim.   (Tr. 249,

263).   Plaintiff further reported and testified that she "can't concentrate long enough to have any

14

activities" and that her concentration was so limited that she could not relate what happened on a television show she had just watched. (Tr. 69, 242, 262). Plaintiff's allegations of severely diminished concentration are belied by her duties as a mail truck delivery driver during the alleged period of disability. It was reasonable for the ALJ to discount plaintiff's credibility given the inconsistency between her performance of this work and her statements of disabling pain. *See Rogers*, 486 F.2d at 248

Second, when asked why she could not work full-time, plaintiff testified that her pain was so great that she became unable to perform at her last full-time position. (Tr. 53). However, when questioned further by the ALJ, plaintiff conceded that she was laid off by the company due to a reduction in force. (*Id.*). The ALJ similarly noted that plaintiff's reports that she has suffered from disabling pain since July 2010 was inconsistent with her collection of unemployment benefits as receipt of these benefits requires recipients to certify that they are able to work on a full-time basis. *See* Tr. 20, 211-12. *See also* Tr. 58-59 (plaintiff testified that she was looking for and was capable of performing full-time employment throughout the period she collected unemployment benefits, which post-dates the alleged disability onset date). Plaintiff's inconsistent statements and her testimony that she was capable of working full-time during the alleged disability period substantially supports the ALJ's decision to discount her credibility. *See Workman v. Comm'r of Soc. Sec.*, 105 F. App'x 794, 801 (6th Cir. 2004) (holding that the receipt of unemployment benefits is "inherently inconsistent" with seeking disability benefits and that this inconsistency is properly considered by an ALJ in making a credibility determination).

Third, the medical evidence of record does not support plaintiff's reports of disabling

15

back pain.  An October 12, 2007 MRI of plaintiff's lumbar spine showed some mild

degenerative disc disease and spondylitic changes at T11-12 and T12-L1 and mild to very mild

diffuse bulging disc with no central canal stenosis at L1-2, L4-5, and L5-S1.  (Tr. 461-61).

Plaintiff injured her back in 2008 due to a fall.  (Tr. 673).  An August 2009 CT scan of

plaintiff's lumbar spine revealed some bulging at L5-S1 causing some thecal sac flattening but no

herniation.  (Tr. 299).  An MRI from May 2010 showed that plaintiff had disc bulges at L2-L3

and L5-S1, but no disc herniation or stenosis was found and she was diagnosed with degenerative

disc disease of the lower thoracic and upper lumbar spine.  (Tr. 547).  In June 2010, plaintiff's

treating physician noted that because there was no disc bulging plaintiff was not a candidate for

surgery and he recommended treating her with epidural injections as that had proved effective in

the past.  (Tr. 515).  In July 2011, plaintiff told her doctor that she was "impressed" with the

effects of her pain medication and reported sleeping better; in September 2011, plaintiff told her

treating physician that she was "doing well" and was happy with her medication; and in March

2012, she reported that she was getting good pain relief from her medications.  (Tr. 673, 692,

694).  At the ALJ hearing, the ME testified that plaintiff's reports of pain were disproportionate

to the objective medical evidence and he could not find anything in the record which supported

the severity of the pain alleged.  (Tr. 73-74).  The ME noted that plaintiff had undergone some

invasive procedures, including facet and epidural blocks, which supported her claims of chronic

pain.  (Tr. 74).  However, the ME opined that plaintiff still retained the capacity to perform a

reduced range of light work in light of the medical evidence.  (Tr. 91).  This objective, clinical,

and opinion evidence substantially supports the ALJ's decision to not fully credit plaintiff's

subjective statements regarding the limiting effects of her impairments.  *See Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 531-32 (6th Cir. 1997) (ALJ may discount plaintiff's statements of disabling symptoms where record lacks objective, physical, or clinical evidence of disabling severity and statements are inconsistent with activities of daily living).

Lastly, the ALJ did not err by considering plaintiff's activities of daily living in assessing her credibility. The ALJ noted plaintiff's reports to Dr. Chiappone that her back pain limits her ability to do housework and that she tries to do laundry but can only do chores for a short duration; she does not wash dishes; she drives occasionally; she can no longer do yard work; she does not cook as often as in the past; and she can manage funds. (Tr. 21, citing Tr. 562). The ALJ then concluded that in consideration of these reports, as well as the other evidence identified by the ALJ and discussed *supra*, plaintiff retained the capacity to work full-time. (Tr. 21). The ALJ did not mischaracterize the evidence relating to plaintiff's activities of daily living or determine that these activities, standing alone, supported discounting her credibility. The ALJ simply cited to plaintiff's activities of daily living as one of several bases for discounting her credibility. It was not improper for the ALJ to consider this evidence in assessing plaintiff's credibility. *See Walters*, 127 F.3d at 531-32.

The ALJ's decision to discount plaintiff's credibility is substantially supported by the medical evidence of record, the inconsistency between plaintiff's allegations and her activities of daily living, her performance of part-time work, and her testimony that during the alleged period of disability that she believed and certified that she was capable of working full-time. Accordingly, plaintiff's final assignment of error should be overruled.

17

## III.  Conclusion

For the reasons stated herein, the undersigned recommends that the ALJ's decision be

**AFFIRMED** and that this matter be closed on the docket of the Court.


Date: ___1/7/15___

Karen L. Litkovitz
United States Magistrate Judge

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

RHONDA ROWLAND-MONK,             Case No. 1:13-cv-754
    Plaintiff,                        Barrett, J.
                                       Litkovitz, M.J.

    vs

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

### NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.   This period may be extended further by the Court on

timely motion for an extension. Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.   If the

Report and Recommendation is based in whole or in part upon matters occurring on the record at

an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or

such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless

the assigned District Judge otherwise directs.   A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in

accordance with this procedure may forfeit rights on appeal.   *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).